[State of Alabama, *ex rel.* Williams, v. Griffin, *et al.*]

# State of Alabama, *ex rel.* Williams, v. Griffin, *et al.*

*Statutory Quo Warranto.*

(Decided December 18, 1901.)

1.  *Constitutional law; constitutionality of "An act to establish a text book board for the public schools of Cullman county and to define its duties and powers," upheld under § 2, Art. IV of Constitution of 1875.*—The act of the general assembly of Alabama, approved March 2d, 1901, (Acts, 1900-1901, p. 1967), entitled "An act to establish a text book board for the public schools of Cullman county, and to define its duties and powers," is not violative of Section 2 of Article •IV of the Constitution of 1875, which requires that "each law shall contain but one subject, which shall be clearly expressed in its title"; all the provisions of the act being germane and complimentary to the subject expressed in the title and necessary to the effectuation of the legislative purpose therein expressed. (SHARPE, J., *dissenting.*)

APPEAL from Cullman Circuit Court.

Heard before Hon. O. KYLE.

This was a statutory proceeding under section 3420 of the Code, instituted in the name of the State on the relation of Thomas B. Williams against S. J. Griffin and four associates, for the purpose of inquiring into and testing the legality of their claim to exercise the privileges and powers of "the Text Book Board of Cullman County, Alabama," under the Act of the general assembly mentioned in the opinion. The information assailed the act as violative of section 2 of Article IV, section 1 of Article II, and section 4 of Article XIII of the Constitution of 1875. Demurrers to the information, setting up the constitutionality of the act, were sustained, and relator appeals.

J. B. BROWN and BROWN & CURTIS, for appellant, cited, on the point treated in the opinion, *Weaver v. Lapsley,* 43 Ala. 224; *Tuscaloosa Bridge Co. v. Olm-*

[State of Alabama, *ex rel.* Williams, v. Griffin, *et al.*]

*stead,* 41 Ala. 9; *State v. Hartford Fire Ins. Co.,* 99 Ala. 224; *Ballentyne v. Wickersham,* 75 Ala. 533; *Lowndes Co. v. Hunter,* 49 Ala. 507; *Stein v. Leeper,* 78 Ala. 517; *Miller v. Jones,* 80 Ala. 89; *Remagnana v. Crook,* 85 Ala. 226; *Ex parte Reynolds,* 87 Ala. 138; *Montgomery v. State,* 88 Ala. 141; *Ex Parte Cowert,* 79 Ala. 94; *Morgan v. State,* 81 Ala. 72; *Glenn v. Lynn,* 89 Ala. 608; *Yerby v. Cochrane,* 101 Ala. 541.

GEORGE H. PARKER,. *contra,* cited *Judson v. City of Bessemer,* 87 Ala. 240; *Gandy v. State,* 86 Ala. 20; *Fox v. McDonald,* 101 Ala. 51; *Ex Parte Mayor and Aldermen of Birmingham,* 116 Ala. 189; *Walker v. Griffith,* 60 Ala. 361; *State v. Harrub,* 95 Ala. 176; *State v. Sayre,* 118 Ala. 1; *Benners v. State,* 124 Ala. 98; *State v. Stripling,* 113 Ala. 120; *Montgomery B. & L. Asso. v. Robinson,* 69 Ala. 413; *Ex Parte Cowert,* 92 Ala. 94; *Wolff v. Taylor,* 98 Ala. 254; *Ex Parte Gayles,* 108 Ala. 514; *State v. Price,* 50 Ala. 572; *Ex Parte Pollard,* 40 Ala. 91; *State ex rel. v. Rogers,* 107 Ala. 444 .

SHARPE, J.—This proceeding questions the right of defendants to hold offices as members of a text book board under an act of March 2, 1901, entitled "An act to establish a text book board for the public schools of Cullman county and to define its duties and powers." Acts 1900-1901, p. 1967. The petition is grounded on the assumption that the act is void as being offensive to the constitution of 1875, and particularly to that part of section two of article four which requires that "each law shall contain but one subject, which shall be clearly expressed in its title." To the writer, this position seems to be well taken. In its body, the act provides for the appointment by the State superintendent of education of five qualified electors of Cullman county to be known as "the text book board of the public schools of Cullman county, Alabama," (section 1) who are to select a uniform series of text books to be used in the public schools of that county, which series after adoption is not to be changed for six years but may be added to and "that no part of the public school fund shall be paid to any school in which said text books are not used" (section 2). Lists of the

[State of Alabama, *ex rel.* Williams, v. Griffin, *et al.*]

books so selected are to be furnished by the county superintendent to each teacher in the county (section 3) who must report the kind of books they have used in their schools during each scholastic quarter, to the county superintendent of education, who is prohibited to pay any public school funds to any teacher who has used any book or books other than those selected by the text book board on pain of having the amount so paid deducted from his commissions and kept in the general school fund (section 4). Board sessions for certain business are to be held (sections 5 and 6) for which compensation *per diem* is allowed the members (section 6), who incur a penalty if interested in deals concerning said books (section 7) and the county is to pay the expenses of carrying out the act (section 8). Official terms of the members are six years, vacancies to be filled by the State superintendent of education (section 9), and the board is given power to make and enforce rules, contracts, etc. (section 10), and conflicting laws are repealed (section 11).

The title of this act portends no more than the establishment of a text book board for the schools mentioned, and its investiture with powers and duties. Those powers and duties being so far as the title shows wholly indefinite their general mention therein contributes nothing to reveal the character of legislation proposed, and, therefore, contributes nothing towards compliance with the constitution.—*Glenn v. Lynn*, 89 Ala. 608.

The term text book board has not by either technical or ordinary usage acquired a meaning which could of itself indicate, that the creation of a board bearing that name would be attended by the selection and exclusive use of text books of uniform series in the public schools referred to, and even less does the title imply such use would be unchangeable for long periods of time, and would be compelled under forfeitures and penalties or otherwise. Judged by its body the object of the attempted legislation was the establishment of such uniform and compulsory use of books. If it be conceded that the creation of a body bearing the name of text book board might imply that its duty would be the selection of text books, yet the exercise of that function would of itself be

4s

[State, *ex rel.* Johnson v. Southern Building & Loan Association.]

wholly ineffective to accomplish the main legislative purpose. The measure shorn of features not indicated by the title and limited to the establishment of a text book board with undefined duties and powers, would probably not have been enacted into law. Therefore to limit the act so as to uphold it only as to that part relating to the board, might be to recognize as law that which was not intended to operate as law, independently of provisions so rejected. In such case the vice of unconstitutionality pervades the whole enactment and there can be no separation of valid from invalid parts.

The majority of the court are of the opinion that the case falls within the principles declared in *Ex parte Mayor and Aldermen of Birmingham*, 116 Ala. 186, and hold that all the provisions of the act are germane and complementary to the subject expressed in the title of the act and are necessary to the effectuation of the legislative purpose expressed in the title. The judgment will, therefore, be affirmed.

SHARPE, J., dissenting.